# EXHIBIT 1

# SETTLEMENT AGREEMENT

## I.  INTRODUCTION

This Agreement is made and entered into this October 8, 2008, between AIMCO and the Plaintiffs in *Burns et al. v. Apartment Investment and Management Company et al.*, No. 3:07-cv-746 (M.D.Tenn.).

## II.  DEFINITIONS

A.  "Agreement" means this Settlement Agreement.

B.  "AIMCO" or "the Company" means Apartment Investment and Management Company, AIMCO Properties, L.P., NHP Management Company, and AIMCO Bethesda Holdings, Inc., as well as their current or former subsidiaries, affiliates, predecessors, successors, assigns, insurers, officers, directors, shareholders, associates, employees, and agents, except as otherwise provided herein.

C.  "Burns Litigation" means *Burns et al. v. Apartment Investment and Management Company et al.*, No. 7:07-cv-2175, United States District Court for Middle District of Tennessee.

D.  "Burns Plaintiffs" means the named Plaintiffs in the Burns Litigation:

Jamie Ashburn
James Brown
Homer Davenport
Paul Hensley
Albert Husley
Jeffrey Jenkins
Antonio Jones
Reginald Jones
Fred Lewis
Thomas Massey
Joshua Merrit
Brian Mitchell
Curtis Myers
Michael Pooley
Jerry Rush

Kenneth Sales
James Todd, Jr.
Jerry Vaughn
Mark Vital
Frank Williams

E.    "Plaintiffs" means the named plaintiffs in the Burns Litigation.

F.    "Unpaid Overtime Claims" refers to claims that AIMCO violated the FLSA by its alleged failure to pay maintenance personnel for hours worked in excess of 40 in a work week.

G.    "Waiting Time Claims" refers to claims that AIMCO violated the FLSA by its alleged failure to pay maintenance personnel for time spent on-call waiting to respond to emergency service requests from tenants.

H.    "Final Approval" means that the Agreement has been finally approved by the District Court.

I.    "FLSA" means the federal Fair Labor Standards Act, 29 U.S.C.§ 201, *et seq.*

## III.  CASE BACKGROUND

In the Burns Litigation, the Plaintiffs assert Unpaid Overtime Claims and Waiting Time Claims.

A.    <u>Discovery</u>.  The parties have conducted written discovery.

B.    <u>Trial</u>.  A trial has been scheduled for November 17, 2009.

## IV.  NATURE, PURPOSE, AND BENEFITS OF SETTLEMENT

A.    <u>Rationale for Settlement</u>.  Although none of the parties abandon their positions taken in the Burns Litigation, the parties believe that continued litigation would be protracted, expensive, uncertain, and contrary to their best interests.  Thus,

the parties believe that this settlement is in the best interests of all of the parties, and the best way to resolve the disputes between them in the Burns Litigation.

B.     Settlement of Unpaid Overtime Claims.  As detailed in Section VI below, this Agreement provides for settlement and dismissal with prejudice of the Burns Litigation in consideration for certain monetary benefits to the Plaintiffs.

C.     Resolution of Waiting Time Claims.  As detailed in Section VII below, this Agreement provides for a method to resolve the Waiting Time Claims of Albert Husley, Fred Lewis, Jerry Vaughn, and Mark Vital, whom Plaintiffs' counsel represent are the only Plaintiffs in the Burns Litigation with Waiting Time Claims that are not being released under this Agreement and will be pursued under the process set forth in Section VII.

D.     Deferral of Attorneys' Fees and Costs.  As detailed in Section VIII below, this Agreement provides for a deferral of the adjudication of Plaintiffs' claim for attorneys' fees and costs statutorily available under the FLSA.

V.     STATEMENT OF NO ADMISSION

A.     Denial of Liability.  AIMCO denies liability to the Plaintiffs upon any claim, cause of action, and factual or legal theory.  AIMCO vigorously denies the claims asserted by the Plaintiffs, and continues to assert that if the Burns Litigation were to proceed to trial, AIMCO would prevail.

B.     No Admission.  This Agreement is not intended to constitute, and does not in fact constitute, any admission by AIMCO as to the merits, validity, or accuracy of any of the allegations or claims made against it in the Burns Litigation.

C.     No Use as Evidence of Violation.  Nothing in this Agreement nor any action taken in implementation thereof is intended by the parties to, nor will any of the

foregoing constitute, be introduced, be used, or be admissible in any way in this case or any other judicial, arbitral, administrative, investigation, or other form of proceeding as evidence of any violation of any federal, state, or local law, statute, ordinance, regulation, rule, or executive order, or any obligation or duty at law or in equity. Notwithstanding the foregoing, the Agreement may be used in any proceeding in the District Court that has as its purpose the interpretation, implementation, or enforcement of the Agreement or any orders or judgments of the District Court entered in connection therewith.

VI.    SETTLEMENT OF UNPAID OVERTIME CLAIMS

    A.    Settlement Amount.  In consideration for dismissal with prejudice of the Burns Litigation, as well as the other covenants set forth in this Agreement, AIMCO agrees to pay (a) the sum specified for each Plaintiff as set forth in Exhibit A hereto, the total of which is $135,384.64; and (b) attorneys' fees (if any) and expenses (if any) as determined by the process set forth in Section VIII.

    B.    Confidential Settlement and Release of Claims.  In consideration for his or her individual settlement amount set forth in Exhibit A, and for AIMCO's agreement to pay statutorily available attorneys' fees and costs as determined by and if awarded under the method set forth in Section VIII, each of the Plaintiffs other than Plaintiffs Albert Husley, Fred Lewis, Jerry Vaughn, and Mark Vital shall execute a Confidential Settlement and Release of Claims in substantially the identical form as set forth in Exhibit B hereto, while Plaintiffs Albert Husley, Fred Lewis, Jerry Vaughn, and Mark Vital shall execute a Confidential Settlement and Release of Claims in substantially the identical form as set forth in Exhibit C hereto.  Each of the Plaintiffs shall return to Plaintiffs' counsel his or her executed Confidential Settlement and Release of Claims

no later than 90 days of the date of Final Approval. If a Plaintiff fails to execute a Confidential Settlement and Release of Claim, AIMCO is under no obligation to pay the amount that would have been paid to that Plaintiff as set forth in Exhibit A.

C.     Withholding and Deductions.  Any payments made to the Plaintiffs shall be subject to all applicable deductions and withholdings, and which shall be reported on a Form W-2 issued to each of the Plaintiffs.

D.     No Contribution to ERISA Plans.  The parties agree that any amounts paid under this Agreement do not represent a modification of the Plaintiffs' previously credited hours of service under any employee benefit plan sponsored by AIMCO. Such amounts shall not form the basis for additional contributions to, benefits under, or any other monetary entitlement under AIMCO's benefit plans. AIMCO reserves the right to interpret or modify the language of its benefit plans to make clear that any amounts paid pursuant to this Agreement are not for "hours worked" as defined by the applicable plans and that additional contributions or benefits are not required by this Agreement.

E.     Payment to the Plaintiffs.  Within 60 days after the deadline for Plaintiffs to return the Confidential Settlement and Release set forth in Section VI.B above, AIMCO shall make a payment by check in accordance with the amounts set forth in Exhibit A to each of the Plaintiffs who provides a fully executed Confidential Settlement and Release of Claims within the time limits set forth in Section VI.B. Such payments to each of the Plaintiffs shall be less applicable deductions and withholdings.

F.     Failure to Return Timely Confidential Settlement and Release of Claim.

In the event that any of the Plaintiffs fail to execute a Confidential Settlement and Release of Claims and return the same within the time limits set forth in Section VI.B. above, any such individual shall have no further right to the monetary relief set

forth in this Section, and AIMCO shall have no further obligation to make the payment identified in Exhibit A to such individual and may retain such sum. The failure by any of the Plaintiffs to execute a Confidential Settlement and Release of Claims within the time limits set forth in Section VI.B. above shall not delay or otherwise affect the dismissal with prejudice of the Burns Litigation.

G. <u>Dismissal of Burns Litigation</u>. Upon payment of the sums due to those Plaintiffs identified in Exhibit A who have executed a Confidential Settlement and Release of Claims within the time limits set forth in Section VI.B above, all of Plaintiffs' claims in the Burns Litigation shall be dismissed with prejudice.

VII. <u>RESOLUTION OF WAITING TIME CLAIMS</u>

A. <u>Deferral of Waiting Time Claims</u>. While all of Plaintiffs' claims in the Burns Litigation shall be dismissed with prejudice under this Agreement, the individual Waiting Time Claims of Plaintiffs Albert Husley, Fred Lewis, Jerry Vaughn, and Mark Vital shall survive and resolution of the same shall be deferred. Under this Agreement, the individual Waiting Time Claims of Plaintiffs Albert Husley, Fred Lewis, Jerry Vaughn, and Mark Vital shall be decided under the same procedure to be followed for the 84 other plaintiffs with Waiting Time Claims in the 23 cases against AIMCO brought by Plaintiffs' counsel that are currently pending in jurisdictions other than the Middle District of Tennessee. A list of the 88 plaintiffs with Waiting Times Claims, including Plaintiffs Albert Husley, Fred Lewis, Jerry Vaughn, and Mark Vital, is attached as Exhibit D hereto. The procedure for resolving all Waiting Time Claims is set forth in Exhibit E hereto. Plaintiffs' counsel represent that other than those plaintiffs identified in Exhibit D, no other plaintiffs in the 24 cases against AIMCO pending in the Middle District of Tennessee, and other jurisdictions will be pursuing

Waiting Time Claims and/or reserving their Waiting Time Claims under this Agreement or a similar agreement with AIMCO.

VIII.  ATTORNEYS' FEES AND COSTS

    A.    Attorneys' Fees and Costs.  While all claims in the Burns Litigation shall be dismissed with prejudice under this Agreement, the Plaintiffs' claims for attorneys' fees and costs statutorily available under the FLSA to Plaintiffs shall survive and resolution of the same shall be deferred.  Under this Agreement, Plaintiffs' claims for attorneys' fees and costs statutorily available under the FLSA shall be decided along with the claims for attorneys' fees and costs statutorily available under the FLSA in the 24 cases against AIMCO brought by Plaintiffs' counsel that are currently pending in jurisdictions other than the Middle District of Tennessee. The procedure for determining Plaintiffs' claims for attorneys' fees and costs is set forth in Exhibit F hereto.  For purposes of this Agreement and the attached Exhibits, Plaintiffs shall be deemed the "prevailing party," which shall mean only that Plaintiffs are not barred by the Supreme Court decision, *Buckhannon Board and Care Home, Inc, et al. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598 (2001), from being eligible to recover attorneys' fees and costs statutorily available under the FLSA notwithstanding that no judgment or consent decree has been entered in the litigation. All other arguments and defenses to attorneys' fees and costs are hereby reserved.

IX.  COURT APPROVAL PROCESS

    A.    Final Approval.  Promptly after execution of this Agreement, the parties shall file a joint Motion for Approval of the settlement, including submittal of this Agreement.  The parties shall seek an expeditious hearing on the joint motion for approval, consistent with the Court's docket and the schedules of counsel.

If the Court approves the settlement, or approves the settlement subject to conditions or modifications acceptable to both parties, the Court shall dismiss all claims in the Burns Litigation with prejudice upon AMICO's payment of the sums due to those Plaintiffs identified in Exhibit A who have executed a Confidential Settlement and Release of Claims within the time limits set forth in Section VI.B above.

If the Court does not approve the settlement, or approves the settlement but subject to conditions or modifications which are not acceptable to both parties, the parties shall attempt to negotiate in good faith in order to modify the Agreement in a form acceptable to both parties and the Court.

The District Court shall retain jurisdiction of this case for a period of 15 months following the date of Final Approval.

X.    MISCELLANEOUS PROVISIONS

    A.    Authority.  Plaintiffs' counsel represent that they are authorized by all of the Plaintiffs to negotiate and execute this Agreement on behalf of the Plaintiffs. Counsel for AIMCO represent that they are authorized to negotiate and execute this Agreement on behalf of AIMCO.

    B.    Confidentiality.  The parties and their attorneys agree to keep and maintain all information concerning settlement discussions, the terms and conditions of this Agreement, and payments made under this Agreement (collectively referred to "Settlement Information") strictly confidential except to the extent required by law. This Section shall specifically prohibit either party or their attorneys from publishing or disclosing to the media any Settlement Information. Notwithstanding the foregoing, nothing in this Section shall:

Case 3:07-cv-00746   Document 88-1   Filed 10/09/08   Page 9 of 30 PageID #: 560

(1)     prohibit the parties from disclosing Settlement Information to the courts;

(2)     prohibit the Plaintiffs from disclosing Settlement Information to their spouses, attorneys, tax advisors, or tax authorities; or

(3)     prohibit AIMCO from disclosing Settlement Information to the company's auditors, accountants, and disclosed in public filings as is necessary under law or in the ordinary course of the companies' business.

C.     <u>Interpretation of the Agreement</u>.  The Agreement shall be interpreted and enforced under the laws of the State of Tennessee without regard to its conflict of laws provisions.  Any claim arising out of or relating to the Agreement, or the subject matter hereof, shall be resolved solely and exclusively in the United States District Court for the Middle District of Tennessee, and the parties hereby consent to the personal jurisdiction of the District Court in connection therewith.

The parties and their counsel to this Agreement participated jointly in the negotiation and preparation of the Agreement.  Accordingly, the parties and their counsel agree that no rule of construction shall apply against any party or their counsel or in favor of any party or their counsel, and any uncertainty or ambiguity shall not be interpreted against one party or their counsel or in favor of the other.

The use of the term "Section" herein refers to the specific section number identified or, where appropriate, the subsections thereunder.

D.     <u>Final Agreement</u>.  This Agreement and the attached Exhibits, along with the Confidential Settlement and Release Agreements submitted by the Plaintiffs, constitute the entire agreement between the parties with respect to the resolution of the Burns Litigation and supersede all prior representations, understandings, and

agreements of the parties with respect thereto. The Plaintiffs and AIMCO enter into this Agreement based solely upon its terms and not in reliance upon any representations or promises other than those contained in this Agreement. This Agreement may be modified only by a writing signed by the parties hereto.

D. **Counterparts.** The Agreement may be executed in one or more actual or telecopied or e-mailed counterparts, all of which will be considered one and the same instrument and all of which will be considered duplicate originals.

Dated: October 8, 2008

By: _____    By: _____
John M. Husband, P.C.                    Joseph M. Sellers
Thomas E.J. Hazard, P.C.                 Charles E. Tompkins
Christina F. Gomez                        Llezlie L. Green
Tanya E. Milligan                         Andrew Bullion
HOLLAND & HART, LLP                       COHEN, MILSTEIN, HAUSFELD & TOLL, PLLC
555 Seventeenth Street                    1100 New York Avenue, N.W.
Suite 3200                                Suite 500, West Tower
Denver, CO 80202                          Washington, DC 20005
Telephone:   (303) 295-8000               Telephone:     (202) 408-4600
Facsimile:   (303) 295-8261               Facsimile:     (202) 408-4699

And                                       And

Antonio Robinson                          Gordon Ball
LITTLER MENDELSON, P.C.                    BALL & SCOTT
3348 Peachtree Rd., N.W.                   Bank of America Building
Suite 1100                                550 West Main Avenue, Suite 750
Atlanta, GA 30326-1007                    Knoxville, TN 37902
Telephone: (404) 760-3962                 Telephone: (865) 525-7028
Facsimile: (404) 233-2361                 Facsimile: (865) 525-4679

And                                       *Attorneys for Plaintiffs*

Camille Webb Steward
MILLER & MARTIN
1200 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219
Telephone: (865) 744-8528
Facsimile: (865) 744-8628

*Attorneys for Defendants*

3917898_1.DOC

Exhibit A

Tennessee

| First name | Last name | Settlement Amount |
|------------|-----------|-------------------|
| Jamie | Ashburn | $5,511.89 |
| James | Brown | $100.00 |
| Homer | Davenport | $100.00 |
| Paul | Hensley | $456.51 |
| Albert | Husley | $8,193.17 |
| Jeffrey | Jenkins | $100.00 |
| Antonio | Jones | $13,213.33 |
| Reginald | Jones | $6,136.07 |
| Fred | Lewis | $1,249.29 |
| Thomas | Massey | $1,662.59 |
| Joshua | Merrit | $8,181.43 |
| Brian | Mitchell | $7,256.20 |
| Curtis | Myers | $58,906.26 |
| Michael | Pooley | $3,271.16 |
| Jerry | Rush | $1,496.68 |
| Kenneth | Sales | $100.00 |
| James | Todd, Jr. | $15,544.47 |
| Jerry | Vaughn | $3,705.59 |
| Mark | Vital | $100.00 |
| Frank | Williams | $100.00 |
| | | $135,384.64 |

# CONFIDENTIAL SETTLEMENT AND RELEASE OF CLAIMS

This Confidential Settlement and Release of Claims ("Release") is between «Full Name» ("«Last Name»") and Apartment Investment and Management Company; AIMCO Properties, L.P.; NHP Management Company; and AIMCO Bethesda Holdings, Inc.; their parent companies, affiliates and subsidiaries; management companies; their predecessors and successors; and their respective officers, directors, employees, agents, representatives and insurers (collectively "AIMCO").

## BACKGROUND OF THE LAWSUIT

A.      Currently pending in the United States District Court for the Middle District of Tennessee is a wage and hour lawsuit captioned <u>Burns et al v. Apartment Investment and Management Company, et al.</u>, Case No. 3:07-cv-746 (the "Lawsuit").   «Last Name», one of the party plaintiffs to the Lawsuit, claims that AIMCO violated the federal Fair Labor Standards Act ("FLSA") by failing to pay her/him for all time worked.

B.      AIMCO denies all allegations made by «Last Name» in the Lawsuit.

C.      Although neither AIMCO nor «Last Name» abandons its position taken in the Lawsuits, the parties believe that continued litigation would be protracted, expensive, uncertain and contrary to their best interests.   The parties believe that this settlement is in the best interests of all parties, and the best way to resolve the disputes between them in the Lawsuit.

D.      This Release sets forth the terms and conditions of a settlement of the Lawsuit, and any remaining claims «Last Name» may have against AIMCO.

## TERMS OF SETTLEMENT AND RELEASE

1.      Without admitting liability of any kind, and in full and final settlement of all claims and damages alleged by «Last Name» or her/his representatives, as well as any claims for additional compensation; benefits; legal or equitable relief; liquidated damages; and interest to which «Last Name» may be entitled, whether claimed in the Lawsuit or not, AIMCO agrees (a) to pay «Last Name» the gross sum of «Dollar Amount» ($«Dollars»), less applicable deductions and withholdings for federal and state taxes; and (b) to pay attorneys' fees (if any) and costs (if any) statutorily available under the FLSA to counsel for <<Last Name>> as determined by the method set forth in Section VIII of the parties' October 8, 2008 Settlement Agreement.  In return for such payment and agreements by AIMCO, «Last Name» releases, settles and waives any and all claims other than claims for attorneys' fees and costs statutorily available under the FLSA against AIMCO and agrees to comply with the covenants and promises described below.

2.       «Last Name», as a free and voluntary act, agrees to accept the above payments and agreements by AIMCO in full and complete waiver, release and satisfaction of any and all claims against AIMCO of any kind or description, whether known or unknown, that «Last Name» may have, or have had, arising up to the date s/he signs this Release.  «Last Name» agrees that the legal rights and claims that s/he is giving up include, but are not limited to, any claim, right, demand, charge, complaint, cause of action, obligation or liability which «Last Name» may have against AIMCO based upon (a) the Fair Labor Standards Act (other than her/his claims for attorneys' fees and costs statutorily available under the FLSA), whether stated in the Lawsuit or not; (b) all state or local wage and hour laws, whether stated in the

Lawsuit or not; (c) any claims under federal or state discrimination laws, including claims under the federal Age Discrimination in Employment Act of 1967 and Title VII of the Civil Rights Act of 1964, as amended; and (d) all state common law rights and claims, such as wrongful discharge, breach of contract, fraud, omission or misrepresentation. While this Release is intended to be all-encompassing, nothing in this Release shall release any claims under state workers' compensation laws. «Last Name» agrees that s/he has had a full and fair opportunity to consult with counsel of her/his own choosing concerning this waiver and release, and that s/he agrees to this waiver and release knowingly and voluntarily, without any coercion from anyone.

3.      «Last Name» agrees that the amounts paid under this Release shall not form the basis for additional contributions to, benefits under, or any other monetary entitlements under AIMCO's benefit plans. AIMCO reserves the right to interpret or modify the language of its benefit plans to make clear that any amounts paid under this Release are not for "hours worked" or "compensation paid" and that additional contributions or benefits are not required by this Release.

4.      «Last Name» agrees that after the Court approves this Release and the parties' October 8, 2008 Settlement Agreement and payment is received by «Last Name», s/he and her/his attorneys will take all steps necessary to execute and file a Stipulation of Dismissal of the Lawsuit with prejudice, with her/his claims for attorneys' fees (if any) and costs (if any) statutorily available under the FLSA to be determined by the method set forth in Section VIII of the parties' October 8, 2008 Settlement Agreement. «Last Name» further agrees that after the Court approves this Release and the parties' October 8, 2008 Settlement Agreement, and AIMCO has made payment pursuant to this Release, s/he will not file, cause to be filed, or affirmatively join or opt in, as a class member, beneficiary or other participant in any lawsuit with respect to the subject matter of the Lawsuit or any other claim released under this Release and, if involuntarily joined in any lawsuit against AIMCO with respect to the subject matter of the Lawsuit or any other claim released under this Release (for example, as an opt-out putative class member), «Last Name» agrees to waive her/his right to any recovery that may result from such lawsuit or proceeding, and not to pursue claims on her/his own behalf. Notwithstanding the foregoing, nothing in this Release prevents or limits «Last Name» from filing a charge or participating in an investigative proceeding of the Equal Employment Opportunity Commission or other governmental agency.

5.      «Last Name» and her/his attorneys, as well as AIMCO and its attorneys, agree to keep and maintain all information concerning settlement discussions, the terms and conditions of this Release and the parties' October 8, 2008 Settlement Agreement, and payments made under this Release (collectively referred to "Settlement Information") strictly confidential except to the extent required by law. This Section specifically prohibits either party or their attorneys from publishing or disclosing to the media any Settlement Information. Notwithstanding the foregoing, nothing in this Section shall:

(a)      prohibit the parties from disclosing Settlement Information to the courts;

(b)      prohibit «Last Name» from disclosing Settlement Information to her/his spouse, attorney, tax advisor, or tax authorities; or

(c) prohibit AIMCO from disclosing Settlement Information to the company's auditors, accountants, and disclosed in public filings as is necessary under law or in the ordinary course of the companies' business.

6. «Last Name» shall not apply for employment with AIMCO in the future, and if s/he does apply, AIMCO has the right to reject her/his application without any resulting liability. However, nothing herein shall require «Last Name» to resign from employment, nor immunize AIMCO from liability for requiring «Last Name» to resign, if «Last Name» is currently employed by AIMCO, or if in the future a residential community or apartment complex where s/he is employed is acquired by AIMCO. If «Last Name» is inadvertently hired by AIMCO, AIMCO shall have the right to terminate «Last Name»'s employment.

7. «Last Name» agrees that the payment s/he is accepting by signing this Release has value to her/him; that s/he would not be entitled to the payment without successful resolution of her/his claims in the Lawsuits or by signing this Release; that s/he will receive the payment in exchange for the benefit to AIMCO from her/his signing this Release; and that when AIMCO pays «Last Name» the payment, AIMCO will withhold all applicable federal, state and local taxes.

8. By signing below, «Last Name» authorizes AIMCO to deliver the payment directly to her/his attorney in the form of a check made payable to «Last Name».

9. «Last Name» represents that s/he has not previously assigned or transferred any of the legal rights and claims that s/he has given up by signing this Release, and s/he agrees that this Release also binds all persons who might assert a legal right or claim on her/his behalf, such as her/his heirs, personal representatives and assigns, now and in the future.

10. «Last Name» agrees that:

(a) this Release, together with the parties' October 8, 2008 Settlement Agreement, constitute the entire agreement between «Last Name» and AIMCO relating to the subject of this Release, without regard to any other oral or written information that «Last Name» may have received about this Release;

(b) the terms of this Release may not be altered, amended, changed or modified except in writing signed by an authorized representative of AIMCO;

(c) if any part of this Release is declared to be unenforceable, such part shall be severed from the Release but all other provisions of this Release shall remain enforceable; and

(d) this Release shall be governed by federal law and by the internal laws of the State of Tennessee, irrespective of the choice of law rules of any jurisdiction.

11. «Last Name» agrees that this Release does not constitute an admission of liability; that it does not constitute any factual or legal precedent or finding whatsoever; and that it may not be used as evidence in the Lawsuits or any other proceeding of any kind, except in an action alleging breach of this Release or to enforce the provisions of this Release.

12.    «Last Name» acknowledges and agrees that if «Last Name» is age 40 or older, among the rights which s/he is releasing under this Release is the right to sue for age discrimination under the federal Age Discrimination in Employment Act of 1967.  If «Last Name» is age 40 or older, «Last Name» should review the following carefully before signing this Release.

(a)    «Last Name» has up to twenty-one (21) days after s/he has received this Release to consider whether to sign this Release.

(b)    During that time, «Last Name» should consider whether s/he wishes to sign this Release and, if appropriate, to seek her/his own legal counsel for advice about the Release.

(c)    «Last Name» is under no obligation to communicate her/his decision whether or not to sign this Release before the 21-day review period has expired.  «Last Name» may, however, sign and return the Release to AIMCO and Plaintiffs' counsel before the expiration of the 21-day review period, which will waive the full 21-day review period.  The signed Release should be returned to:

| For AIMCO: | | For Plaintiffs' Counsel: |
|---|---|---|
| John M. Husband, Esq. | **and** | Joseph M. Sellers, Esq. |
| Holland & Hart, LLP | | Cohen, Millstein, Hausfeld & Toll, PLLC |
| 555 17th Street, Suite 3200 | | 1100 New York Avenue, N.W. |
| Denver, CO 80202-8749 | | Suite 500, West Tower |
| Fax: (303) 295-8261 | | Washington, DC 20005 |
| | | Fax: (202) 408-4699 |

(d)    After «Last Name» has signed and delivered this Release to AIMCO and Plaintiffs' counsel, «Last Name» shall have seven (7) calendar days after s/he signs the Release (not counting the day s/he signs the Release) to revoke the Release, but «Last Name» may do so only by delivering a written statement of revocation to both of the two individuals listed above within the 7-day revocation period.  If «Last Name» mails her/his revocation statement to the individuals listed above, both statements must be postmarked no later than seven (7) calendar days following the date «Last Name» signed this Release (not counting the day it was signed).

(e)    If AIMCO and Plaintiffs' counsel both do not receive «Last Name»'s written statement of revocation by the end of the 7-day revocation period plus three (3) calendar days for mailing, then this Release will become legally enforceable when this Release is approved by the Court.  This Release will not be effective or enforceable until (i) the end of the 7-day revocation period and (ii) this Release is approved by the Court.

(f)    «Last Name» agrees that if s/he revokes this Release by following the procedure described above and/or the Court refuses to approve this Release, «Last Name» and AIMCO shall stand in the same position as if this Release had never been prepared or signed, and that AIMCO shall have no obligation to provide «Last Name» with the payment described in this Release.

## **Acknowledgment**

Your signature below acknowledges that you have read this document fully, that you understand and agree to its contents, that you understand that it is a legally binding document, and that you have been advised to consult a lawyer of your choosing before you sign this Release and have had the opportunity to do so. By signing below, you further acknowledge your waiver of all rights to claim that any or all of the legal theories or assumptions used for settlement purposes are for any reason inaccurate or inappropriate, or that your consent to this Release was the result of a unilateral mistake in law or fact.

Signed: _____

Print name: _____

Street Address: _____

City, State and Zip Code _____

Social Security Number: _____

Date: _____

AS TO FORM:

Joseph M. Sellers
Christine E. Webber
Llezlie L. Green
COHEN, MILSTEIN, HAUSFELD & TOLL, PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

_____

Exhibit C

# CONFIDENTIAL SETTLEMENT AND RELEASE OF CLAIMS

This Confidential Settlement and Release of Claims ("Release") is between «Full Name» ("«Last Name»") and Apartment Investment and Management Company; AIMCO Properties, L.P.; NHP Management Company; and AIMCO Bethesda Holdings, Inc.; their parent companies, affiliates and subsidiaries; management companies; their predecessors and successors; and their respective officers, directors, employees, agents, representatives and insurers (collectively "AIMCO").

## BACKGROUND OF THE LAWSUIT

A.    Currently pending in the United States District Court for the Middle District of Tennessee is a wage and hour lawsuit captioned Burns et al v. Apartment Investment and Management Company, et al., Case No. 3:07-cv-746 (the "Lawsuit").  «Last Name», one of the party plaintiffs to the Lawsuits, claims that AIMCO violated the federal Fair Labor Standards Act ("FLSA") by failing to pay her/him for all time worked.

B.    AIMCO denies all allegations made by «Last Name» in the Lawsuit.

C.    Although neither AIMCO nor «Last Name» abandons its position taken in the Lawsuit, the parties believe that continued litigation would be protracted, expensive, uncertain and contrary to their best interests.  The parties believe that this settlement is in the best interests of all parties, and the best way to resolve the disputes between them in the Lawsuit.

D.    This Release sets forth the terms and conditions of a settlement of the Lawsuit, and any remaining claims «Last Name» may have against AIMCO.

## TERMS OF SETTLEMENT AND RELEASE

1.    Without admitting liability of any kind, and in full and final settlement of all claims and damages alleged by «Last Name» or her/his representatives, as well as any claims for additional compensation; benefits; legal or equitable relief; liquidated damages; and interest to which «Last Name» may be entitled, whether claimed in the Lawsuit or not, AIMCO agrees (a) to pay «Last Name» the gross sum of «Dollar Amount» ($«Dollars»), less applicable deductions and withholdings for federal and state taxes; (b) to pay attorneys' fees (if any) and costs (if any) statutorily available under the FLSA to counsel for <<Last Name>> as determined by the method set forth in Section VIII of the parties' October 8, 2008 Settlement Agreement; and (c) to resolve «Last Name»'s claim that AIMCO violated the FLSA by its alleged failure to pay «Last Name» for time spent on-call waiting to respond to emergency service requests from tenants ("Waiting Time Claims") under the procedure set forth in Section VII of the parties' October 8, 2008 Settlement Agreement.  In return for such payment and agreements by AIMCO, «Last Name» releases, settles and waives any and all claims other than Waiting Time Claims and claims for attorneys' fees and costs statutorily available under the FLSA against AIMCO and agrees to comply with the covenants and promises described below.

2.    «Last Name», as a free and voluntary act, agrees to accept the above payments and agreements by AIMCO in full and complete waiver, release and satisfaction of any and all claims against AIMCO of any kind or description, whether known or unknown, that «Last Name» may have, or have had, arising up to the date s/he signs this Release.  «Last Name» agrees that the legal rights and claims that s/he is giving up include, but are not limited to, any

Exhibit C

claim, right, demand, charge, complaint, cause of action, obligation or liability which «Last Name» may have against AIMCO based upon (a) the Fair Labor Standards Act (other than her/his Waiting Time Claim and claims for attorneys' fees and costs statutorily available under the FLSA), whether stated in the Lawsuit or not; (b) all state or local wage and hour laws, whether stated in the Lawsuit or not; (c) any claims under federal or state discrimination laws, including claims under the federal Age Discrimination in Employment Act of 1967 and Title VII of the Civil Rights Act of 1964, as amended; and (d) all state common law rights and claims, such as wrongful discharge, breach of contract, fraud, omission or misrepresentation. While this Release is intended to be all-encompassing, nothing in this Release shall release any claims under state workers' compensation laws. «Last Name» agrees that s/he has had a full and fair opportunity to consult with counsel of her/his own choosing concerning this waiver and release, and that s/he agrees to this waiver and release knowingly and voluntarily, without any coercion from anyone.

3.      «Last Name» agrees that the amounts paid under this Release shall not form the basis for additional contributions to, benefits under, or any other monetary entitlements under AIMCO's benefit plans.  AIMCO reserves the right to interpret or modify the language of its benefit plans to make clear that any amounts paid under this Release are not for "hours worked" or "compensation paid" and that additional contributions or benefits are not required by this Release.

4.      «Last Name» agrees that after the Court approves this Release and the parties' October 8, 2008 Settlement Agreement and payment is received by «Last Name», s/he and her/his attorneys will take all steps necessary to execute and file a Stipulation of Dismissal of the Lawsuits with prejudice, with her/his claims for attorneys' fees (if any) and costs (if any) statutorily available under the FLSA to be determined by the method set forth in Section VIII of the parties' October 8, 2008 Settlement Agreement and her/his Waiting Time Claims to be determined by the method set forth Section VII of the parties' October 8, 2008 Settlement Agreement.  «Last Name» further agrees that after the Court approves this Release and the parties' October 8, 2008 Settlement Agreement, and AIMCO has made payment pursuant to this Release, s/he will not file, cause to be filed, or affirmatively join or opt in, as a class member, beneficiary or other participant in any lawsuit with respect to the subject matter of the Lawsuits or any other claim released under this Release and, if involuntarily joined in any lawsuit against AIMCO with respect to the subject matter of the Lawsuit or any other claim released under this Release (for example, as an opt-out putative class member), «Last Name» agrees to waive her/his right to any recovery that may result from such lawsuit or proceeding, and not to pursue claims on her/his own behalf.   Notwithstanding the foregoing, nothing in this Release prevents or limits «Last Name» from filing a charge or participating in an investigative proceeding of the Equal Employment Opportunity Commission or other governmental agency.

5.      «Last Name» and her/his attorneys, as well as AIMCO and its attorneys, agree to keep and maintain all information concerning settlement discussions, the terms and conditions of this Release and the parties' October 8, 2008 Settlement Agreement, and payments made under this Release (collectively referred to "Settlement Information") strictly confidential except to the extent required by law.  This Section specifically prohibits either party or their attorneys from publishing or disclosing to the media any Settlement Information.  Notwithstanding the foregoing, nothing in this Section shall:

(a)      prohibit the parties from disclosing Settlement Information to the courts;

Exhibit C

(b)    prohibit «Last Name» from disclosing Settlement Information to her/his spouse, attorney, tax advisor, or tax authorities; or

(c)    prohibit AIMCO from disclosing Settlement Information to the company's auditors, accountants, and disclosed in public filings as is necessary under law or in the ordinary course of the companies' business.

6.    «Last Name» shall not apply for employment with AIMCO in the future, and if s/he does apply, AIMCO has the right to reject her/his application without any resulting liability. However, nothing herein shall require «Last Name» to resign from employment, nor immunize AIMCO from liability for requiring «Last Name» to resign, if  «Last Name» is currently employed by AIMCO, or if in the future a residential community or apartment complex where s/he is employed is acquired by AIMCO.  If «Last Name» is inadvertently hired by AIMCO, AIMCO shall have the right to terminate «Last Name»'s employment.

7.    «Last Name» agrees that the payment s/he is accepting by signing this Release has value to her/him; that s/he would not be entitled to the payment without successful resolution of her/his claims in the Lawsuits or by signing this Release; that s/he will receive the payment in exchange for the benefit to AIMCO from her/his signing this Release; and that when AIMCO pays «Last Name» the payment, AIMCO will withhold all applicable federal, state and local taxes.

8.    By signing below, «Last Name» authorizes AIMCO to deliver the payment directly to her/his attorney in the form of a check made payable to «Last Name».

9.    «Last Name» represents that s/he has not previously assigned or transferred any of the legal rights and claims that s/he has given up by signing this Release, and s/he agrees that this Release also binds all persons who might assert a legal right or claim on her/his behalf, such as her/his heirs, personal representatives and assigns, now and in the future.

10.    «Last Name» agrees that:

(a)    this Release, together with the parties' October 8, 2008 Settlement Agreement, constitute the entire agreement between «Last Name» and AIMCO relating to the subject of this Release, without regard to any other oral or written information that «Last Name» may have received about this Release;

(b)    the terms of this Release may not be altered, amended, changed or modified except in writing signed by an authorized representative of AIMCO;

(c)    if any part of this Release is declared to be unenforceable, such part shall be severed from the Release but all other provisions of this Release shall remain enforceable; and

(d)    this Release shall be governed by federal law and by the internal laws of the State of Tennessee, irrespective of the choice of law rules of any jurisdiction.

11.    «Last Name» agrees that this Release does not constitute an admission of liability; that it does not constitute any factual or legal precedent or finding whatsoever; and that

Exhibit C

it may not be used as evidence in the Lawsuits or any other proceeding of any kind, except in an action alleging breach of this Release or to enforce the provisions of this Release.

12.     «Last Name» acknowledges and agrees that if «Last Name» is age 40 or older, among the rights which s/he is releasing under this Release is the right to sue for age discrimination under the federal Age Discrimination in Employment Act of 1967.  If «Last Name» is age 40 or older, «Last Name» should review the following carefully before signing this Release.

(a)     «Last Name» has up to twenty-one (21) days after s/he has received this Release to consider whether to sign this Release.

(b)     During that time, «Last Name» should consider whether s/he wishes to sign this Release and, if appropriate, to seek her/his own legal counsel for advice about the Release.

(c)     «Last Name» is under no obligation to communicate her/his decision whether or not to sign this Release before the 21-day review period has expired.  «Last Name» may, however, sign and return the Release to AIMCO and Plaintiffs' counsel before the expiration of the 21-day review period, which will waive the full 21-day review period.  The signed Release should be returned to:

For AIMCO:                                   For Plaintiffs' Counsel:

John M. Husband, Esq.          **and**      Joseph M. Sellers, Esq.
Holland & Hart, LLP                          Cohen, Millstein, Hausfeld & Toll, PLLC
555 17th Street, Suite 3200                  1100 New York Avenue, N.W.
Denver, CO 80202-8749                        Suite 500, West Tower
Fax: (303) 295-8261                          Washington, DC 20005
                                             Fax: (202) 408-4699

(d)     After «Last Name» has signed and delivered this Release to AIMCO and Plaintiffs' counsel, «Last Name» shall have seven (7) calendar days after s/he signs the Release (not counting the day s/he signs the Release) to revoke the Release, but «Last Name» may do so only by delivering a written statement of revocation to both of the two individuals listed above within the 7-day revocation period.  If «Last Name» mails her/his revocation statement to the individuals listed above, both statements must be postmarked no later than seven (7) calendar days following the date «Last Name» signed this Release (not counting the day it was signed).

(e)     If AIMCO and Plaintiffs' counsel both do not receive «Last Name»'s written statement of revocation by the end of the 7-day revocation period plus three (3) calendar days for mailing, then this Release will become legally enforceable when this Release is approved by the Court.  This Release will not be effective or enforceable until (i) the end of the 7-day revocation period and (ii) this Release is approved by the Court.

(f)     «Last Name» agrees that if s/he revokes this Release by following the procedure described above and/or the Court refuses to approve this Release, «Last Name» and AIMCO shall stand in the same position as if this Release had never been prepared or signed, and that AIMCO shall have no obligation to provide «Last Name» with the payment described in this Release.

Exhibit C

## **Acknowledgment**

Your signature below acknowledges that you have read this document fully, that you understand and agree to its contents, that you understand that it is a legally binding document, and that you have been advised to consult a lawyer of your choosing before you sign this Release and have had the opportunity to do so.  By signing below, you further acknowledge your waiver of all rights to claim that any or all of the legal theories or assumptions used for settlement purposes are for any reason inaccurate or inappropriate, or that your consent to this Release was the result of a unilateral mistake in law or fact.

Signed: _____

Print name: _____

Street Address: _____

City, State and Zip Code _____

Social Security Number: _____

Date: _____

Exhibit C

AS TO FORM:

Joseph M. Sellers
Christine E. Webber
Llezlie L. Green
COHEN, MILSTEIN, HAUSFELD & TOLL, PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

_____

<u>Exhibit D</u>

| <u>STATE</u> | <u>FIRST NAME</u> | <u>LAST NAME</u> |
|---|---|---|
| AL | Darrell | Howard |
| AL | Micah | Smith |
| AZ | Moises | Baca |
| AZ | Keith | Potter |
| AZ | Oscar | Valenzuela |
| AZ | Steven | Van Guilder |
| CA | Roger | Daly |
| CO | James | Fazzone |
| CO | Trevor | Hamilton |
| CO | Johnny | Sizemore |
| FL | Charles | Antoine |
| FL | Felix | Cabrera |
| FL | Luis | Giraldes-Borrego |
| FL | David | Langlais |
| FL | Raymond | Lindsey |
| FL | James | Mhoon |
| FL | Juan | Ortiz-Laboy |
| FL | Joel | Rivera |
| FL | Ernesto | Rubido |
| FL | Agustin | Santiago |
| FL | Hector | Vasquez |
| FL | Michael | Monegan |
| GA | Juan | Bussey |
| GA | Andre | Humphrey |
| GA | Philip | Philander |
| IL | Andrew | Besch |
| IL | John | Kolep |
| IN | Shawna | Breeding |
| IN | Rufus | Downey |
| IN | Jessie | Monk |
| IN | Timothy | Phelan |
| IN | Willie | Strong |
| KY | Adam | Koch |
| KY | Douglas | Miller |
| KY | Joseph | Porter |
| MD | Thomas | Barr |
| MD | Herbert | Benjamin |
| MD | William | Broadie |
| MD | Clarence | Brock |
| MD | Lewis | Brown |
| MD | Charles | Campbell |
| MD | Aldo | Cruz |

| | | |
|---|---|---|
| MD | Darryl | Grant |
| MD | Anthony | Hammond |
| MD | Beion | Joseph |
| MD | Michael | Moore |
| MD | Keith | Thonton |
| MI | Kevin | Meegan |
| MI | Lenard | Ross |
| MO | Latheron | Moffatt |
| MO | Antoine | Smith |
| MO | Paul | Stasiak |
| NC | Daniel | Allen |
| NC | Jesue | Saavedra |
| NJ | Linda | Hulse |
| NJ | Joe | Vadon |
| NY | Michael | Wynn |
| OH | Charles | Gilman |
| OH | Dennis | Marbury |
| OH | Walter | Penson |
| OH | Perry | Smith |
| OH | Ray | Toler |
| PA | Christopher | Albertson |
| PA | Mark | Ankner |
| PA | Edward | Getts |
| PA | Michael | Holloman |
| PA | Benjamin | Walker |
| SC | Preston | Stanton |
| SC | Richard | Walker |
| TN | Albert | Husley |
| TN | Fred | Lewis |
| TN | Jerry | Vaughn |
| TN | Mark | Vital |
| TX | Jose | Arellano |
| TX | Adolphus | Davis |
| TX | Alejandro | Dominguez |
| TX | Desmond | Jackson |
| TX | Dennis | King |
| TX | Michael | Ray |
| TX | Raul | Rigual |
| TX | Jerry | Vaughn |
| TX | Larry | Woodard |
| VA | Juan | Morales |
| VA | Vincent | Robison |
| VA | James | Slattery |
| VA | Charlie | Watson |
| DC | Lorenzo | Hall |
| DC | Herbert | Paz Varela |

## WAITING TIME ARBITRATION PROCESS

1.    In the first stage, we will adjudicate 6 claims by arbitration.

2.    Two claims will be tried to each of three arbitrators.

3.    Hunter Hughes will select 3 candidates for each arbitrator position. Each side may strike one candidate and the remaining candidate will serve as an arbitrator for 2 claims. Defendants will have the first strike.

4.    Hunter Hughes will select randomly the claimants whose claims will be adjudicated by arbitration.

5.    Hughes will select randomly 8 candidates for each of 3 pools, grouped geographically, for a total of 24 candidates selected for 6 claims to be tried. Three weeks after names are selected, each side may strike three candidates from each pool, using alternating strikes, and the remaining two candidates will present their claims for arbitration. Plaintiffs will have the first strike.

6.    The arbitrations are to be held at the locales where the claimants were employed at the time these claims arose, provided that the parties may agree to conduct the arbitrations before the same arbitrator at any other locale to which they agree. The parties may argue the persuasiveness and applicability of any authority they choose; the location of the arbitration shall not necessarily control the authority that shall apply.

7.    The claims eligible for selection for the Western venue may be selected from claims arising at facilities located within the 8th, 9th, 10th and 11th Circuits. Claims eligible for selection for the Central venue may be selected from claims arising at facilities located within the 5th, 6th and 7th Circuits. Claims eligible for selection for the Eastern venue may be selected from claims arising at facilities located within the 1st, 2nd, 3rd, 4th and DC Circuits.

8.    Unless specifically provided herein, the Rules of the American Arbitration Association applicable to employment claims will govern these arbitrations. Except upon a claim of fraud, neither party may appeal from the awards rendered in these proceedings.

9.    There will be no new discovery in connection with these proceedings.

10.   AIMCO must provide a complete response to the outstanding interrogatory seeking the identities and last known address of co-workers for each of the 6 claimants whose claims will be arbitrated. However, AIMCO's response to the interrogatory will be limited to one year of employment for each claimant, and plaintiffs will pick the specific year for which the interrogatory will be supplemented.

11.   There will be no pre-hearing dispositive motions.

12.   The parties will ask the arbitrator to issue a reasoned award within 15 days of when each arbitration concludes.

13.    The parties may submit a pre-hearing brief, not to exceed 15 pages, for each claim arbitrated, at a time prescribed by the arbitrator.

14.    The parties agree to split payment of the arbitrator's fee and to resolve any dispute over the award of attorneys' fees and costs in connection with the arbitrations at a separate arbitration to be conducted to determine any award of attorneys' fees and costs, in a manner to be prescribed separately.

15.    Following the results of the arbitration, a mediation session will be conducted to resolve the individual Waiting Time Claims of plaintiffs not included in the arbitration. If the parties are unable to agree on settlement of the remaining Waiting Time Claims, another round of arbitration may proceed according to the same procedure outlined above, followed by a second round of mediation. The rounds of mediation and arbitration will continue as necessary until all claims have been resolved either by settlement or by arbitration.

16.    Attorneys' fees and expenses for the litigation will be subject to arbitration under the terms of a separate agreement. For the purpose of this arbitration, the plaintiffs will be treated as a prevailing party under the FLSA.

17.    After each plaintiff with a Waiting Time Claim has agreed to this procedure, the Waiting Time Claims of such plaintiffs will be dismissed with prejudice. If five or more plaintiffs do not agree to abide by this procedure for resolving their claims, then defendant shall have the right to withdraw from this agreement and the parties all return to the status quo ante. In the event defendants exercise this right, the claims of claimants with Waiting Time Claims filed in the Northern District of California and the District of Columbia will be submitted for arbitration under the procedures identified herein, in the respective locales of those plaintiffs, using the arbitrator who presided over the claims from the Central venue.

18.    The issues presented to the arbitrator are: (a) is each plaintiff's Waiting Time Claim compensable; and (b) if the answer to the first question was yes, then what are the number of hours for which plaintiff is entitled to compensation, and the total amount of compensation due each plaintiff for such claim?

19.    Attached to this agreement as Exhibit A is a list of all plaintiffs on whose behalf plaintiffs' counsel are pursuing Waiting Time Claims. No other Waiting Time Claims are being pursued through the arbitration process provided for herein. Other than the persons identified in the record of filings in the twenty-two pending cases, plaintiffs' counsel do not represent any other persons with claims of unpaid overtime against AIMCO.

20.    This settlement agreement shall not be admissible in any other proceeding.

21.    If the parties have any disputes concerning the interpretation of this agreement, they will be resolved by Hunter Hughes as arbitrator.

## ATTORNEYS' FEES & COSTS PROCESS

1. The parties have agreed that the award of attorneys' fees (if any) and costs (if any) shall be decided by arbitration at the conclusion of all of the 24 cases against AIMCO brought by Plaintiffs' counsel that are currently pending (collectively referred to as the "Pending Cases"). The Pending Cases may be resolved by arbitration or mediation.

2. The American Arbitration Association ("AAA") National Rules for the Resolution of Employment Disputes and Due Process Protocols shall apply to any fee/cost arbitration, although nothing herein shall require the arbitration to be conducted by the AAA.

3. The location for the arbitration shall be the home city of the arbitrator chosen to determine the fee/cost issue.

4. The arbitrator shall apply the Fair Labor Standards Act case law regarding the award of attorneys' fees (if any) and costs (if any).

5. The arbitrator shall be selected within 60 days of the conclusion of the Pending Cases. Hunter Hughes will submit a list of 5 potential arbitrators, and each party shall strike in an alternating method the names of the potential arbitrators until one name remains. The party to strike the first name shall be determined by a coin toss.

6. The Plaintiffs shall file a petition setting out their claim for attorneys' fees and costs. The petition will include all time records, rates and costs incurred. The time records must include the level of detail normally required by law.

7. The Defendants shall file a response to Plaintiffs' petition within 90 days of receipt of Plaintiffs' petition.

8. Plaintiffs shall file a reply to Defendants' response within 45 days of receipt of Defendants' response.

9. In addition to oral argument, the arbitrator may hear testimony from one witness per side. Affidavits may be submitted to the arbitrator.